**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Todd Schwallie,<br><br>                Plaintiff,<br><br>v.<br><br>American Family Mutual Insurance Company,<br><br>                Defendant. | No. CV-12-00681-PHX-NVW<br><br>**ORDER** |

Before the Court is Defendant American Family Mutual Insurance Company's Motion for Summary Judgment (Doc. 63), Plaintiff's Response, and the Reply. American Family Mutual Insurance (American Family) moves for summary judgment on the grounds that it is entitled to judgment as a matter of law that Todd Schwallie cannot recover underinsured motorist benefits under his American Family automobile insurance policy. For the following reasons, American Family's Motion will be denied.

**I.     Background**

     **A.     Arizona Uninsured/Underinsured Motorist Act**

Arizona's Uninsured/Underinsured Motorist Act (UMA) requires that every insurer make underinsured motorist coverage available and provide such coverage upon the request of the insured. A.R.S. § 20-259.01(B). Underinsured motorist coverage applies when an insured's total damages exceed all applicable liability limits, subject to any valid limitations the insurer imposes. In order to comply with the UMA, insurers must extend the offer of underinsured motorist coverage in writing, and the "selection of

1  limits or rejection of coverage by a named insured or applicant on a form approved by the
2  director shall be valid for all insureds under the policy." *Id*. Because the mandatory
3  language from the statute is clear, the requirement that the offer of underinsured motorist
4  coverage be in writing cannot be waived by either party. *Estate of Ball By & Through*
5  *Sayre v. Am. Motorists Ins. Co.*, 181 Ariz. 124, 127, 888 P.2d 1311, 1314 (1995). As a
6  result, in Arizona, an insurer must obtain proof that it offered underinsured motorist
7  coverage and that the insured either selected a limit or rejected the coverage in writing.
8  *Id*. When an insurer fails to make a written offer of underinsured motorist coverage, if
9  the insured has an accident in which an underinsured motorist claim is available, the
10 insurer must impute underinsured motorist coverage equal to the policy's liability limits.
11 *Id*.

12       The UMA also provides for situations in which underinsured motorist coverage
13 may be limited. The most important limitation is found in A.R.S. § 20-259.01(H):

> If multiple policies or coverages purchased by one insured on different vehicles apply to an accident or claim, the insurer may limit the coverage so that only one policy or coverage, selected by the insured, shall be applicable to any one accident. If the policy does not contain a statement that informs the insured of the insured's right to select one policy or coverage as required by this subsection, within thirty days after the insurer receives notice of an accident, the insurer shall notify the insured in writing of the insured's right to select one policy or coverage. For the purposes of this subsection, "insurer" includes every insurer within a group of insurers under a common management.

20 As a result, when one insured person buys multiple policies on different vehicles with an
21 insurer, an insurer can preclude the insured from aggregating multiple policies. But to
22 incorporate this limitation, the insurer must notify the insured in writing of his right to
23 select which policy will apply. In Arizona, therefore, an insurer may limit the stacking of
24 underinsured motorist claims under multiple policies only by taking affirmative steps set
25 forth in the UMA. Any limitations to underinsured motorist coverage not explicitly set
26 forth in the UMA are void. *Taylor v. Travelers Indem. Co. of Am.*, 198 Ariz. 310, 315, 9
27 P.3d 1049, 1054 (2000).

## B. Factual Background

Mr. Schwallie had two insurance policies with American Family: a motorcycle insurance policy for his 2000 Honda motorcycle (the Cycle Policy), and a family car insurance policy for his 2001 Dodge truck (the Family Car Policy). The Family Car Policy included an endorsement for underinsured motorist bodily injury coverage with bodily injury limits of $100,000. The endorsement for underinsured motorist coverage under the Family Car Policy contained an "Other Insurance" provision which read "[i]f two or more policies are issued to you by us or any other member company of the American Family Insurance Group of companies, apply [sic] to the same auto accident, only one of the policies will apply. You will select the one policy that will apply." The Cycle Policy did not, before May 2011, contain an underinsured motorist endorsement.

On May 13, 2011, Mr. Schwallie was involved in a motorcycle accident while riding the motorcycle identified in the Cycle Policy and suffered serious injuries. The driver of the other vehicle, who caused the accident, was insured by a policy with liability limits of $15,000 per person. The other driver's insurance company paid Mr. Schwallie $15,000, the coverage limit on that policy. Mr. Schwallie's total damages, including medical bills and lost wages, exceeded $115,000.

On July 1, 2011, Mr. Schwallie contacted American Family to make a demand for payment under his underinsured motorist coverage to cover the costs of the May 13, 2011 accident. That letter did not specify under which policy Mr. Schwallie sought payment. The First Notice of Loss American Family created after that request identifies the claim as one under the Family Car Policy, and noted that the vehicle involved in the accident was Mr. Schwallie's motorcycle. After American Family began the claims process, it became aware that it did not have a signed rejection of the underinsured motorist endorsement for Mr. Schwallie's Cycle Policy. The American Family agents processing his claim determined that, without a signoff of an underinsured motorist endorsement, they were required to reform the Cycle Policy to impute underinsured motorist coverage.

An American Family agent contacted Mr. Schwallie and told him that the underinsured motorist coverage would be added to his Cycle Policy and that an additional premium would be charged. American Family later reformed the policy as part of the claims process to add an endorsement for underinsured motorist bodily injury coverage with bodily injury limits of $100,000. The Underinsured Motorist Coverage portion of the reformed Cycle policy contained an "Other Insurance" provision identical to the one in the Family Car Policy. However, Mr. Schwallie never saw nor read the reformed Cycle Policy until after this litigation commenced.

Ultimately, American Family paid Mr. Schwallie the policy limit of $100,000 for underinsured motorist coverage under his reformed Cycle Policy on August 25, 2011. The Release and Trust Agreement Mr. Schwallie signed to trigger that payment specified that the payment was pursuant to the policy number of the Cycle Policy. Mr. Schwallie subsequently requested another payment of the $100,000 underinsured policy limit under his Family Car Policy on October 13, 2011. American Family denied his claim. American Family justified it's denial by arguing that the "Other Insurance" provision of both underinsured motorist endorsements precluded recovery under both the Cycle and Family Car policies.

**II.     Legal Standard**

A party moving for summary judgment must demonstrate that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant has the burden of showing the absence of genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). At the summary judgment stage, the nonmoving party's evidence is presumed true, and all inferences from the evidence are drawn in the light most favorable to the non-moving party. *Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 864 (9th Cir. 2009).

### III. Analysis

There are no meaningful factual disputes between the parties in this case. The dispositive question for this Motion is whether Mr. Schwallie can recover under the underinsured motorist coverage of both his Family Car Policy and his reformed Cycle Policy. Mr. Schwallie argues that, because American Family did not take the steps necessary to effectuate the "Other Insurance" limitation on his reformed Cycle Policy prior to the collision, the limitation cannot be applied to prevent stacking of the underinsured motorist coverage on his Family Car Policy. In response, American Family contends that the unambiguous language of both the Family Car Policy and the reformed Cycle Policy bars Mr. Schwallie from recovery under both policies for the same accident.

The Arizona Supreme Court has repeatedly held that the UMA has "a remedial purpose and must be construed liberally in favor of coverage, with strict and narrow construction given to offsets and exclusions." *Taylor*, 198 Ariz. at 314, 9 P.3d at 1053. By enacting the UMA, the Arizona legislature "intended a broad application of [underinsured motorist] coverage to provide benefits up to the policy limits whenever the insured is not indemnified fully by the available limits of liability." *Id*. at 315, 1054. Nevertheless, insurers in Arizona unquestionably have the right to limit coverage by preventing "stacking" of underinsured motorist policies for the same accident or claim. A.R.S. § 20-259.01(H)**.**

That limitation is not self-executing, however; an insurer must include "additional policy language . . . to incorporate the limitation into a policy." *State Farm Mut. Auto. Ins. Co. v. Lindsey*, 182 Ariz. 329, 331, 897 P.2d 631, 633 (1995) (citation and internal quotation marks omitted). The "additional policy language" that an insurer must include in order to incorporate the "anti-stacking" limitation must be unambiguous, follow the provisions of the statute, and give the insured the right to choose which policy is to be applied. *Id.* A.R.S. § 20-259.01(H) does allow the insurer to notify the insured in writing of the insured's right to select one policy within 30 days after a claim if the anti-stacking

1 limitation does not adequately inform the insured of that right.  But outside of that 30-day window, when an insurer neglects to include such language in the insurance contract, the oversight cannot "be remedied by the carrier notifying insureds of their selection rights after an accident."  *Id.*

In this case, because Mr. Schwallie is attempting to claim multiple underinsured motorist coverages for the same accident, the anti-stacking provision of the UMA might apply.  *Am. Family Mut. Ins. Co. v. Sharp*, 229 Ariz. 487, 491, 277 P.3d 192, 196 (2012).  The remaining question is thus whether American Family adequately took the affirmative steps necessary to effectuate the anti-stacking limitation in Mr. Schwallie's policies.

First, Mr. Schwallie contends that American Family failed to take the necessary affirmative steps because the language of its "Other Insurance" clause is ambiguous.  It is true that the clause is grammatically incorrect, but its meaning is clear and unambiguous.  Despite the error, Mr. Schwallie's Family Car Policy contained language that closely followed the anti-stacking provision of A.R.S. § 20-259.01(H) and informed him of his right to select which policy should be applied.  Therefore, the specific language of American Family's "Other Insurance" clause, though it should be revised to correct its mistake of grammar, does not preclude the application of the anti-stacking limitation.

If Mr. Schwallie's Cycle Policy also contained an underinsured motorist endorsement at the time of the accident, with an identical anti-stacking provision, this would be an easy case and American Family would be entitled to summary judgment.  But Mr. Schwallie's Cycle Policy did not include underinsured motorist coverage at the time of the accident.  Because the insurance agent who sold Mr. Schwallie his Cycle Policy did not have a record of a written offer of underinsured motorist coverage, American Family was statutorily obligated under the Cycle Policy to provide that coverage after Mr. Schwallie made his claim.  Since the Cycle Policy was reformed to include that coverage and the accompanying anti-stacking language only after the accident, this case presents a more complex question of whether the limitation should

apply.

According to Mr. Schwallie, the "Other Insurance" provision of his Family Car Policy has no application where, as here, there was no other underinsured motorist coverage at issue at the time of the accident in question. As a result, Mr. Schwallie contends that the "Other Insurance" clause of the Family Car Policy cannot be applied to his claim on that policy for the May 13, 2011 accident because he had no "other insurance" to which it could refer at that time. In response, American Family argues that it only reformed the Cycle Policy because it was required to do so by operation of law, and so should not be penalized for doing so by being forced to provide benefits under both policies. According to American Family, the anti-stacking provision of A.R.S. § 20-259(H) applies when multiple coverages are invoked for the same accident, and does not depend on whether those coverages were part of the policy at the time of the accident.

American Family's argument cannot, however, be reconciled with the clear directive of the Arizona Supreme Court that the burden is on insurers to take affirmative steps to incorporate an anti-stacking provision. A.R.S. § 20-259(H) sets forth the exclusive method by which an insurer can prohibit the stacking of coverages; if the insurer does not comply with the statutory method of acquiring safe harbor to prohibit stacking, the insurer is liable under both policies. An anti-stacking provision can therefore only be incorporated by express agreement of the parties as part of the written acceptance of an underinsured motorist endorsement that contains such a provision.

When Mr. Schwallie purchased the Cycle Policy, it did not contain the anti-stacking policy because it did not contain the underinsured motorist endorsement. Because American Family failed to obtain a written record that it offered underinsured motorist coverage on the Cycle Policy and that Mr. Schwallie rejected the coverage, American Family was legally required to provide underinsured motorist coverage on the Cycle Policy. In other words, American family was liable for underinsured motorist coverage because they failed to comply with A.R.S. § 20-259.01(B), not because they

"reformed" the Cycle Policy after the accident to add underinsured motorist coverage. As a result, American Family would have been liable for underinsured motorist coverage on the Cycle Policy whether they drafted a new policy with the anti-stacking provision or not.

That American Family was required to reform Cycle Policy does not allow them to take advantage of the anti-stacking provision they included as part of the reformation to limit their liability—the liability existed independent of the reformed policy. Mr. Schwallie did not agree to include the additional anti-stacking policy language, nor did he have to do so in order to be entitled to underinsured motorist benefits. American Family was liable for those benefits by statute, and cannot limit that liability by unilaterally incorporating an anti-stacking provision after the accident.

Further, the Arizona Supreme Court has held that reforming a policy after an accident to make it comply with the requirements of A.R.S. § 20-259.01(H) does not allow an insurer to invoke an anti-stacking provision if the provision did not comply before the accident. *Lindsey*, 182 Ariz. at 331, 897 P.2d at 633. In order to comply, the anti-stacking provision must make clear—at the time the policy is purchased or within 30 days of any claim—that the insured has the right to choose which policy is to be applied. Here, Mr. Schwallie was not informed before the accident that he had the right to choose whether the Family Car Policy or the Cycle Policy should apply because the Cycle Policy did not contain an underinsured motorist endorsement. Indeed, even after the accident it does not appear that Mr. Schwallie was given a copy of the "reformed" Cycle Policy that would purport to incorporate the anti-stacking clause.

The fact that the Family Car Policy contained an anti-stacking provision that did comply with the requirements of A.R.S. § 20-259.01(H) also does not allow American Family to attribute the provision to all subsequent policies. The limitation on underinsured motorist coverage expressed in A.R.S. § 20-259.01(H) creates a statutory safe harbor by which insurers can prevent stacking if they comply with the strict

1  requirements. The strict requirement that the insured be notified of his right to select one
2  policy or coverage would be undermined if insurers could rely on an anti-stacking
3  provision in one policy to limit coverage on multiple policies. Further, Mr. Schwallie
4  was not told within 30 days of his claim that he had the right to choose whether the Cycle
5  Policy or the Family Car Policy should apply. Instead, American Family chose, without
6  Mr. Schwallie's input, to pay his benefit under the Cycle Policy. Though the coverage
7  limits in this case were the same, if the policies had different coverage limits, Mr.
8  Schwallie's right to select one policy would have had serious ramifications for his
9  recovery. Thus, the additional anti-stacking policy language must be incorporated into
10 each policy to limit coverage "precisely because the contractual omission may be vitally
11 important when coverages are *not* identical." *Lindsey*, 182 Ariz. at 331, 897 P.2d at 633.

12 In sum, there is no evidence that American Family informed Mr. Schwallie of his
13 right to select which policy would apply either prior to his accident or within 30 days of
14 its first notice of Mr. Schwallie's claim. As a result, American Family cannot show that
15 it complied with the strict requirements of A.R.S. § 20-259.01(H) that would allow it to
16 prohibit stacking. There is nothing inherently unfair about allowing an insured to stack
17 coverages for actual losses; there is no risk of double recovery as the insured may only
18 receive benefits to be indemnified fully. The Arizona legislature, by imposing strict
19 requirements on insurers both to demonstrate that an insured has declined underinsured
20 motorist coverage and to take affirmative steps to incorporate an anti-stacking provision,
21 has made a policy judgment that such stacking should be allowed unless the insurer takes
22 affirmative steps to prevent it. American Family did not take those steps with the Cycle
23 Policy in this case, and so is liable to Mr. Schwallie on both policies.

24 **IV.    Remaining Issues**

25 The facts relevant to American Family's Motion for Summary Judgment are not in
26 dispute; the issue in this Motion is the purely legal question of whether, on those facts,
27 American Family could be entitled to judgment on the issue of its liability under the

- 9 -

Family Car Policy. For all of the reasons above, American Family is not entitled to judgment as a matter of law. As a result, though he has not yet moved for summary judgment, it appears that judgment on the question of American Family's liability is appropriate in favor of Mr. Schwallie. The Court may, after giving notice and a reasonable time to respond, grant summary judgment for a nonmovant. Fed. R. Civ. P. 56(f)(1). As a result, American Family will be ordered to show cause why summary judgment, as to the issue of its liability under the Family Car Policy only, should not be granted in favor Mr. Schwallie in light of this Order. The issue of Mr. Schwallie's damages would be reserved for trial.

IT IS THEREFORE ORDERED that Defendant American Family Mutual Insurance Company's Motion for Summary Judgment (Doc. 63) is denied.

IT IS FURTHER ORDERED that American Family show cause why summary judgment should not be granted in favor Mr. Schwallie on the issue of American Family's liability under the Family Car Policy under Rule 56(f)(1) by August 19, 2013.

Dated this 5th day of August, 2013.

_____
Neil V. Wake
United States District Judge